UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION



OWEN N. NORTH,

Plaintiff,

v.

HAROLD C. CLARKE and JOHN M.
JABE,

Defendants.

Action No. 3:11–CV–211

MEMORANDUM OPINION

This matter comes before the Court on a Motion to Dismiss from Defendants Harold C.

Clarke, Director of the Virginia Department of Corrections (VDOC), and John M. Jabe, Deputy

Director of the VDOC Division of Operations.  Plaintiff Owen North raises four constitutional

claims under the First and Fourteenth Amendments and 42 U.S.C. § 1983, contesting a VDOC

policy that prevented North from sending an incarcerated friend a compact disc entitled "Dylan

Thomas: The Caedmon Collection."  For the reasons stated below, the Court denies the

defendants' Motion.

I. Statement of the Case

In August 2009, Jabe instituted a policy ("VDOC policy") under which (1) inmates

would not be allowed to purchase non-music compact discs and (2) non-music compact discs in

inmates' possession would be considered contraband.  Inmates already in possession of non-

music compact discs were allowed to keep them.  Jabe eventually modified the policy to permit

1

inmates to order faith-based, non-music compact discs.

North is a citizen of Louisiana and a free man. His friend Shawn Goode is currently incarcerated at Nottoway Correctional Center in Burkeville, Virginia. In December 2010, North attempted to purchase "The Caedmon Collection" and have it sent to Goode as a Christmas gift. On the disc, Dylan Thomas reads his own poetry and that of others, such as W.H. Auden and William Shakespeare. According to North, Thomas's unique voice adds to the literary value of the works that he reads.

When North attempted to have the disc sent to Goode, prison officials told North that he could not order the disc and have it sent indirectly to Goode as a gift. Under VDOC's "publisher only" rule, Goode would have to buy the disc himself using money from his prison account. *Cf. Bell v. Wolfish*, 441 U.S. 520, 548-49 (1979). North heeded the direction and deposited money for the compact disc in Goode's account. Goode then tried to order the disc through Jones Express Music, VDOC's exclusive compact disc provider. Goode's order was refused, however, under the new VDOC policy. North wrote to Clarke in January 2011, complaining of his inability to make his gift to Goode. His complaint was rejected.

North asserts four theories of relief here, arguing the VDOC's prohibition on the purchase and possession of non-music, non-religious compact discs violates

(1) The First Amendment, as lacking penological justification,
(2) The First Amendment, by discriminating against speech lacking religious content,
(3) The Equal Protection Clause of the Fourteenth Amendment, by favoring religious compact discs over secular compact discs, and
(4) The First Amendment, as a ban on gifts lacking penological justification.

Clarke and Jabe contend North lacks standing to raise the first three claims. They additionally argue the latter three theories fail to state claims.

2

## II. Standing

### A. *Article III Standing*

Clarke and Jabe contend North lacks standing to raise the first three claims, arguing that the VDOC policy has not injured North. In order to demonstrate his standing to raise a constitutional claim in federal court, Article III of the Constitution requires the plaintiff to demonstrate:

> (1) [the party] has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992)).

In order to demonstrate the first element of standing, a plaintiff must allege that a legally protected interest he possessed has been concretely and particularly injured. *Koenick v. Felton*, 190 F.3d 259, 263 (4th Cir. 1999). The loss of First Amendment freedom, "for even minimal periods of time," constitutes such an injury. *Elrod v. Burns*, 427 U.S. 347, 373 (1976). The plaintiff must allege a "direct" injury; the fact that a defendant injures a plaintiff in an interest shared with the public will not confer standing upon the plaintiff. *Koenick*, 190 F.3d at 263.

The standing requirement also flows from certain prudential considerations. *Burke v. City of Charleston*, 139 F.3d 401, 405 (4th Cir. 1998). Among those is the requirement that a party must only assert his own legal rights and typically cannot raise a claim in order to vindicate the rights of a third party. *Bishop v. Bartlett*, 575 F.3d 419, 423 (2009) (citing *Warth v. Seldin*, 422 U.S. 490, 498 (1975)).

The party invoking the court's jurisdiction bears the burden of proving his standing. *Bishop*, 575 F.3d at 424. The plaintiff's general fact allegations of injury resulting from a

3

defendant's conduct will suffice to survive the pleading stage. *Lujan*, 504 U.S. at 561.

### B. *North's First Amendment Claims*

Clarke and Jabe argue North has not been injured in his right to free speech by the

VDOC's ban on non-religious, non-music compact discs. The defendants contend the VDOC

policy does not apply to North as a free person, because it does not prevent North from

purchasing the Thomas recordings and does not discriminate against his speech.

The defendants mischaracterize the right North is attempting to exercise. The Complaint

makes it clear that North is not concerned with his own ability to purchase "The Caedmon

Collection." Rather, North seeks to communicate with Goode by sending him that album. The

Supreme Court has recognized a non-inmate's First Amendment interest in communicating

prison inmates. *Montcalm Pub. Corp. v. Beck*, 80 F.3d 105, 109 (4th Cir. 1996). Therefore, the

First Amendment protects North's right to communicate with Goode, which extends to his ability

to give Goode "The Caedmon Collection." The VDOC policy injures him in that right. Since

the policy constrained North's exercise of his ability to communicate with Goode, he suffered an

injury for Article III purposes. *Legend Night Club v. Miller*, 637 F.3d 291 (4th Cir. 2001).

*Thornburgh v. Abbott*, 490 U.S. 401 (1989), illustrates the scope of North's right. There,

a group of publishers challenged a prison regulation permitting a warden to prohibit an inmate

from receiving a publication the warden deemed detrimental to the prison's security, order, or

discipline. *Id.* at 404. The publishers claimed the prohibition violated their rights to

communicate with inmates. 490 U.S. at 403. The Court asserted that "there [was] no question

that publishers who wish to communicate with those who, through subscription, willingly seek

their point of view have a legitimate First Amendment interest in access to prisoners." *Id.* at 408.

4

Prison officials could only restrict the publishers' right to communicate with inmates if the restriction was "reasonably related to legitimate penological interests[.]" 490 U.S. at 413. *See Turner v. Safely*, 482, U.S. 78, 89 (1987).

*Thornburgh* demonstrates that the VDOC policy impeded North from exercising a recognized First Amendment right. *Thornburgh* explained that a non-inmate has a First Amendment interest in communicating with an inmate by sending him a magazine subscription. North has virtually the same interest in communicating with Goode by sending him the Dylan Thomas album. Since Thomas's voice is unique, North's interest will not be vindicated by simply allowing him to send Goode a transcription of Thomas's poetry. North offered a distinct communication to Goode, and Goode wanted to receive it. *See id.* at 408. Therefore, the VDOC policy "direct[ly]"constrained North in his exercise of a recognized First Amendment right. *Koenick*, 190 F.3d at 263. North is permitted to force the defendants to justify the constraint with a valid penological interest. *See Rowe v. Shake*, 196 F.3d 778, 783 (7th Cir. 1999) (holding that a non-inmate had standing to sue prison officials who allegedly delayed delivering his correspondence to an inmate).

Attempting to avoid this result, Clarke and Jabe argue that the VDOC policy does not prohibit communication *per se*, but merely prohibits the particular form in which North aims to make his communication. According to the defendants, the First Amendment protects communication of particular ideas but not the form in which the ideas are communicated.

This argument is erroneous. A person can suffer First Amendment injury when the government restricts only a certain form of his communication. For example, in *Lindell v. Frank*, 377 F.3d 655, 658-60 (7th Cir. 2004), the Seven Circuit held that a prison regulation prohibiting inmates from receiving press clippings from non-inmates violated an inmate's First

5

Amendment rights, even where the department's "publisher only" rule allowed the inmate to receive published materials. Taking the defendants' argument to its logical conclusion, a citizen would suffer no direct injury if the government prevented him from writing a political slogan on a placard rather than stating the slogan verbally, or from listening to an audio recording of a speech instead of reading a transcript. Or, as North points out, if a prison regulation prohibited an inmate from receiving a novel from a vendor rather than from the author himself, the defendants' argument would prevent the inmate or the sender from challenging the policy. Naturally, the defendants find no precedential support for their argument. The defendants' attempted characterization of the policy as merely a ban on a certain form of communication fails in changing the Court's conclusion that the VDOC policy injured North in his First Amendment rights.

### C. *North's Fourteenth Amendment Claim*

While North's third claim stands on slightly different footing, he has standing to make it. Count III alleges the VDOC policy violates the Equal Protection Clause by prohibiting secular compact discs while allowing religious ones.

The Equal Protection Clause prohibits a government actor from treating an individual differently from others with whom he is similarly situated, where the unequal treatment is the result of intentional or purposeful discrimination. *Williams v. Hansen*, 326 F.3d 569, 576 (4th Cir. 2003). The Equal Protection Clause does not prohibit government officials from making classifications; it simply requires them to treat similarly situated persons the same. *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). The Supreme Court has applied heightened levels of scrutiny to classifications that treat individuals differently according to certain conduct, when

6

the different treatment impinges on a fundamental constitutional interest. *See Mem'l Hosp. v.
Maricopa Cty.*, 415 U.S. 250 (1974). For example, in *Memorial Hospital*, the Supreme Court
considered a statute requiring an indigent person to reside in a county for one year before he
could receive nonemergency hospital care at the county's expense. *Id.* at 252. The Court struck
down the statute, reasoning that the statute's "durational requirement" created an "invidious
classification that impinge[d] on the right of interstate travel by denying newcomers the basic
necessities of life." *Id.* at 269 (citation omitted)

Among the fundamental rights guarded from classification by the Equal Protection
Clause is, of course, the right to exercise a First Amendment freedom such as free speech. *See
Police Dept. of City of Chicago v. Mosley*, 408 U.S. 92 (1972). In *Mosley*, the Supreme Court
confronted a Chicago ordinance that prohibited all picketing in front of a public school, save for
picketing related to a school's involvement in any labor dispute. *Id.* at 93, 95 n.2. The appellee
sought to protest a Chicago high school's hiring practices by way of a picket on the sidewalk
adjoining the school. *Id.* The Court considered the ordinance's constitutionality under the Equal
Protection Clause, because the ordinance "treat[ed] some picketing differently than others[.]" *Id.*
at 94. The Court further explained that the appellee's equal protection interest was "closely
intertwined" with his First Amendment interest, since picketing is "expressive conduct[.]" *Id.* at
95. The Court ultimately struck down the ordinance. *Id.* at 95. It held that the city lacked an
interest significant enough to justify allowing speech related to a labor dispute while prohibiting
speech related to other subject matter. *Id.* at 99-102.

*Mosley* demonstrates that a plaintiff suffers constitutional injury to his right under the
Equal Protection Clause when legislation classifies expression according to its content and then
prohibits expression related to a particular classification of content. Under these facts, North has

7

a First Amendment interest in giving "The Caedmon Collection" to Goode. The VDOC policy

distinguishes acceptable content (religious spoken-word) from unacceptable content (secular

spoken-word). The classification limits North in his ability to communicate with Goode in the

form of a non-religious, spoken-word compact disc. The classification may be constitutional,

should the defendants demonstrate that a valid penological interest justifies the policy.

Nonetheless, North has standing to force the defendants to make this showing.

III. Failure to State a Claim

A. *Standard of Review*

Clarke and Jabe mount substantive challenges to Counts II, III, and IV. A motion to

dismiss for failure to state a claim for which relief can be granted challenges the legal sufficiency

of a claim, not the facts supporting it. Fed R. Civ. P. 12(b)(6)(2009); *Goodman v. Praxair, Inc.*,

494 F.3d 458, 464 (4th Cir. 2007). Thus, in deciding a Rule 12(b)(6) motion, a court must accept

all of the factual allegations in the complaint, *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007), as

well as provable facts consistent with those allegations, *Hishon v. King & Spalding*, 467 U.S. 69,

73 (1984), and view those facts in the light most favorable to the plaintiff, *Christopher v.

Harbury*, 536 U.S. 403, 406 (2002).

Even though a motion to dismiss challenges only the legal sufficiency of a claim, Rule

8(a)(2) requires a plaintiff to allege facts that show that its claim is plausible. Fed. R. Civ. P.

8(a)(2) (2007); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 n.3 (2007). A complaint must

contain factual allegations sufficient to apprise a defendant of "notice of what the . . . claim is

and the grounds upon which it rests." *Id.* at 555 (citation omitted). A court may dismiss a claim

that fails to state facts supporting each element of a claim. *Iodice v. United States*, 289 F.3d 270,

281 (4th Cir. 2002).  Furthermore, the court need not accept legal conclusions couched as factual

allegations, *Twombly*, 550 U.S. at 555, or "unwarranted inferences, unreasonable conclusions, or

arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).


### B. *Count II: Content-Based Speech Restrictions*

In Count II, North alleges the VDOC policy violates the First Amendment by

distinguishing between religious and secular spoken-word compact discs.  The defendants argue

the Religious Land Use and Institutionalized Persons Act (RLUIPA, "the Act"), 42 U.S.C.

§ 2000cc et seq. (2000), requires dismissal of this claim.  RLUIPA effectuated Congress's intent

"to provide as much protection as possible to prisoners' religious rights without overly

encumbering prison operations." *Lovelace v. Lee*, 472 F.3d 174, 186 (4th Cir. 2006) (internal

citation omitted).  To that end, RLUIPA prohibits any government receiving federal funding

from burdening the religious exercise of an imprisoned person, even if the burden results from a

rule of general applicability, unless the burden (1) furthers a compelling state interest, and (2) is

the least restrictive means of furthering that interest.  42 U.S.C. § 2000cc-1.  RLUIPA allows an

inmate to "assert a violation of [the Act] as a claim or defense in a judicial proceeding and obtain

appropriate relief against a government." 42 U.S.C. § 2000cc-2.  RLUIPA requires courts to

apply strict scrutiny to free exercise claims from prison inmates, rather than the reasonableness

standard applied to other constitutional claims from inmates. *Lovelace*, 472 F.3d at 186.

The defendants argue RLUIPA supplies an affirmative defense to North's challenge,

because Count II hinges on the distinction between religious and secular speech.  This argument

is incorrect.  RLUIPA does not function in the manner the defendants suggest it does.  RLUIPA

supplies a vehicle for an inmate's free exercise claim and an inmate's defense to a government

9

action. By its terms, the statute does not supply a government's defense to a prisoner's free speech claim. As a practical matter, the obligation RLUIPA imposes on VDOC may explain why its policy allows the receipt of religious spoken-word compact discs. That explanation, though, does not help justify the prohibition on non-religious, spoken-word compact discs. Therefore, RLUIPA provides no basis for dismissing Count II.

### C. *Count III: Denial of Equal Protection*

In Count III, North alleges that VDOC's refusal to allow him to send Goode "The Caedmon Collection" violates North's right to equal protection of the laws under the Fourteenth Amendment. The VDOC policy classifies religious speech separately from secular speech, and, according to North, the limitation on secular speech violates the Equal Protection Clause.

In order to make out a claim under the Equal Protection Clause, a plaintiff must demonstrate that he has been treated differently from others similarly situated and that the unequal treatment was the result of intentional discrimination. *Morrison*, 239 F.3d at 654. Once the plaintiff makes these showings, a court can determine whether the different treatment is justified under the requisite level of review. *Id.* A classification that constrains a person's right to communicate with an inmate is constitutional "'if it is reasonably related to legitimate penological interests' and not an exaggerated response to a particular concern[.]" *Id.* at 655 (citing *Turner*, 482 U.S. at 89).

The Supreme Court has struck down legislation that, while applicable to all persons, classifies certain conduct and threatens fundamental constitutional rights with its treatment of one class of conduct. *See, e.g., Skinner v. State of Okl. ex rel. Williamson*, 316 U.S. 535 (1942); *Zablocki v. Redhail*, 434 U.S. 374, 388 (1978). In *Mosley*, for example, a Chicago ordinance

10

banned picketing in front of a school building during school hours and one half-hour before and

after. 408 U.S. at 93. The ordinance expressly permitted peaceful picketing in front of a school

involved in a labor dispute. *Id.* The appellee sought to protest a high school's hiring practices, a

matter unrelated to the school's involvement in any labor dispute. *Id.* at 93, 95 n.2. The Court

noted that the appellee's equal protection claim was "closely intertwined" with his First

Amendment interests, because the ordinance affected "expressive conduct" and did so "by

classifications formulated in terms of the subject of the picketing." *Id.* at 95. The Court

considered the "crucial question" as whether a legitimate governmental interest was "furthered

by the differential treatment." *Id.*

The Court concluded that the classification furthered no such interest. *Id.* at 100. It first

noted that the Equal Protection Clause and the First Amendment together prevent the

government from granting "the use of a forum to people whose views it finds acceptable, [while

denying] use to those wishing to express less favored or more controversial views." *Id.* at 96.

The Court also noted that certain "time, place, and manner" regulations on picketing can be

justified. *Id.* at 98. The Chicago ordinance was not a "time, place, and manner" regulation;

rather, it altogether prohibited picketing unrelated to a labor dispute. *Id.* at 99. Concluding that

the restriction on non-labor picketing did not further a legitimate governmental interest, the

Court struck the ordinance down. *Id.* at 102.

The defendants contend that North has not identified a classification upon which the

VDOC policy relies. Since the policy applies equally to all inmates, the policy distinguishes

only between certain kinds of property and not between certain kinds of people. According to

the defendants, this kind of classification is not actionable under the Equal Protection Clause.

The defendants' contention is incorrect, because they overlook the fact that the Equal

11

Protection Clause prohibits the unjustified classification and restriction of constitutionally-protected conduct. As the Court has explained, there exists a "clearly recognized First Amendment interest in those who wish to communicate with prison inmates[.]" *Montcalm Pub. Corp.*, 80 F.3d at 109. Dispositive for equal protection purposes is the fact that the policy treats North's attempt to make a non-religious communication with an inmate differently than it would treat his attempt to make a religious communication. *Mosley* demonstrates that the government must tailor any content-based classification of expressive conduct protected by the First Amendment to serve a substantial government interest. 408 U.S. at 99. Since they permit North to make a certain religious communication while they prohibit him from making a non-religious communication, the defendants must demonstrate that the distinction furthers a legitimate penological interest. *See Thornburgh*, 490 U.S. at 413.

### D. *Count IV: Ban on Gifts of Non-Music Compact Discs*

Count IV alleges the VDOC policy violates the First Amendment by prohibiting North from giving Goode a non-music compact disc as a gift without a legitimate penological interest. This claim differs slightly from Count I, where North challenges the prohibition itself, rather than the prohibition's effect on his ability to make a gift.

The defendants first contend the Complaint fails to allege North attempted to make Goode a gift. The Court rejects this argument. It is clear from the Complaint that North wanted to give Goode "The Caedmon Collection" as a gift and the VDOC policy prohibited him from doing that.

The defendants next claim Count IV fails to allege an actionable theory. They reason that, since the Supreme Court has held certain "publisher only" rules constitutional, *See Bell*, 441

12

U.S. at 548-49, then the VDOC policy is constitutional. This argument is difficult to understand. It is unclear how the VDOC "publisher only" rule and the VDOC policy are related on any more than a practical level. As the Complaint makes clear, the VDOC "publisher only" rule and the VDOC policy about which North complains are separate rules. North tried to comply with the "publisher only" rule in order to send Goode "The Caedmon Collection." But the fact that North was required to give Goode the album by way of a cash transfer is irrelevant to the question of whether VDOC was allowed to prevent Goode from receiving "The Caedmon Collection." The defendants seem to assume that North's inability to send Goode that compact disc resulted from the fact that VDOC's exclusive supplier did not carry that disc. The Complaint plainly contradicts this assumption: Goode attempted to purchase the disc from VDOC's supplier using money from North. (*See* Compl. ¶ 13, Docket No. 1.) It is clear that the VDOC policy, rather than the inventory of VDOC's exclusive compact disc supplier, prevented North from making the gift. The VDOC policy must stand or fall on its own terms.

Clarke and Jabe argue that the VDOC policy does not actually prevent North from making a gift to Goode and therefore does not harm North. Rather, the defendants explain, the policy simply provides a certain procedure by which North may buy Goode a gift, and the defendants have done nothing to actually impede North from buying the gift. The defendants analogize North's complaint to that of a third party attempting to send an inmate a book in circumvention of the "publisher only" rule, and argue that the "publisher only" rule validly prevents the third party from doing so.

This argument is incorrect. The defendants appear to respond to a set of allegations the Complaint does not make. To the extent that the VDOC "publisher only" rule somehow affects the VDOC policy, the presumed constitutionality of the former does not automatically justify the

13

latter.  The Complaint clearly explains that North had no issue with the "publisher only" rule.

Rather, he tried to comply with the rule by giving Goode money to buy "The Caedmon

Collection" from VDOC's exclusive supplier.  (*See* Compl. ¶¶ 10-13.)  The VDOC policy

prevented Goode from making the purchase.  The Complaint plainly alleges that the VDOC

policy prohibits North from buying Goode the compact disc even when North complied with the

VDOC procedure for doing so.  The defendants must justify the VDOC policy independently

from the "publisher only" rule.


IV.  Conclusion

   For the reasons stated above, the Court denies the defendants' Motion to Dismiss.

   Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

   An appropriate Order will issue.

                                      /s/
                          James R. Spencer
                          Chief United States District Judge


ENTERED this ___ day of August 2011

14